IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MATTHEW SIMMONS,

    Plaintiff,

      v.

OFFICER A. JONES
(#2259), in his official and individual
capacity,

    Defendant.

CIVIL ACTION FILE
NO. 1:06-CV-2719-TWT

ORDER

      This is a pro se civil rights action.  It is before the Court on the Defendant's

Motion for Summary Judgment [Doc. 43].  For the reasons set forth below, the motion

is denied.

## I.  Background

      The Plaintiff, Matthew Simmons, is a pro se litigant.  He claims the Defendant,

DeKalb County Police Officer Austin Jones, illegally detained him on November 1,

2005, in Decatur, Georgia.  The important facts are mostly disputed.  The Defendant

made a traffic stop and ended up in the parking lot of a convenience store in a high

crime area.  Then, according to the Defendant, he saw a man "peeking" at him from

behind the store.  When the Defendant went to investigate, he claims he saw three men

talking.  At that point, one of the men left by briskly walking away.  The Defendant then went up to the two remaining men – the Plaintiff and Willie Laster.  The Defendant then questioned them and patted them down for weapons.  The Defendant allegedly found a wad of $3,000 cash on Laster.  The Defendant then locked the two men in his patrol car while he ran a criminal records check.

On the other hand, the Plaintiff claims that only he and Laster were present and they were walking to their cars after making purchases in the convenience store. Under the Plaintiff's version, the Defendant blocked the Plaintiff's and Laster's cars from leaving and patted the two men down.  The Plaintiff claims he observed Laster with only a "few . . . crumpled-up [dollar] bills" when searched (Simmons Dep. at 48). Everyone agrees that after searching each man's vehicles and finding no contraband, the Defendant released the two men.  The Plaintiff filed this suit alleging that the Defendant violated his constitutional rights by an unlawful search and seizure of his person.  The Defendant now moves for summary judgment.

## II.  Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light

most favorable to the nonmovant.  <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 158-59 (1970).  The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986).  The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257 (1986).

### III.  <u>Discussion</u>

The Defendant first claims that summary judgment is appropriate because he justifiably stopped the Plaintiff outside the store.  An officer may seize a person - in the form of a brief detention - in order "to make reasonable inquiries to determine whether criminal activity was afoot." <u>U.S. v. Lindsey</u>, 482 F.3d 1285, 1290 (11th Cir. 2007) (<u>citing</u> <u>Terry v. Ohio</u>, 392 U.S. 1 (1968)).  In order to determine whether a seizure was unreasonable, courts ask whether the officer's action was justified at its inception.  <u>Terry</u>, 392 U.S. at 21.  The answer to this question turns on whether the officer had reasonable suspicion of past or imminent criminal activity to make the stop. <u>U.S. v. Acosta</u>, 363 F.3d 1141, 1144 (11th Cir. 2004).  The officer must point to specific, objective, and articulable facts - as opposed to an inchoate and unparticularized suspicion or hunch - that reasonably warrant the intrusion.  <u>Brown v. Texas</u>, 443 U.S. 47, 51 (1979).  In other words, the totality of the circumstances

must give the officer "some minimal level of objective justification" for the seizure. U.S. v. Sokolow, 490 U.S. 1, 7-8 (1989); Illinois v. Wardlow, 528 U.S. 119, 123 (2000).  Although an officer may frisk a suspect if there is a reasonable suspicion of the presence of a weapon, in the Eleventh Circuit, reasonable suspicion of drug trafficking is per se reasonable suspicion of weaponry.  U.S. v. Martin, 794 F.2d 1531, 1533 (11th Cir. 1986) ("weapons in effect are 'tools of the trade' in drug trafficking").

I start with the Defendant's justification for the detention of the Plaintiff. See Terry, 392 U.S. at 20-21 ("[I]t is necessary first to focus upon the governmental interest which allegedly justifies official intrusion upon the constitutionally protected interests of the private citizen, for there is no ready test for determining reasonableness other than by balancing the need to search (or seize) against the invasion which the search (or seizure) entails.") (citations omitted); see also U.S. v. Virden, 488 F.3d 1317, 1321 (11th Cir. 2007) (factors to consider in evaluating reasonableness of Terry stop are: (1) law enforcement purposes served by detention; (2) diligence with which the police pursue the investigation; (3) scope and intrusiveness of detention; and (4) duration of detention).  The Defendant claims that the detention of the Plaintiff was warranted because the area around the convenience store is a "high crime area known for illegal drug activity."  He further claims that he

Case 1:06-cv-02719-TWT   Document 53   Filed 04/15/08   Page 5 of 13

personally made over one hundred drug arrests in the area. (Def.'s Mot. for Summ. J., at 2). In this allegedly drug-infested setting, the Defendant argues that the actions of the Plaintiff and his companion(s) created a reasonable suspicion of wrongdoing. This suspicion first arose from the alleged "peek" around the building by one of the men and the flight of the unidentified third man. (Jones Aff. ¶¶ 5-6). The Defendant claims he grew more suspicious when Laster and Simmons claimed to know each other, but could not identify each other by name. (Jones Aff. ¶ 7). Given the nature of the area, under the Defendant's version of events, the Defendant had a reasonable suspicion of drug activity justifying a <u>Terry</u> stop. The flight of a man and two men who were interacting but could not name each other in a known drug-dealing area creates an objective level of justification for the stop.

But that is the Defendant's version of what happened. At this stage of the litigation, I must view the evidence in the light most favorable to the Plaintiff. The Plaintiff says that he began talking to Laster while they were purchasing items in the convenience store. The Plaintiff denies that anyone peeked around the corner to catch a glimpse of police presence in the area, and the Plaintiff flatly denies the presence of any third man. Additionally, the Plaintiff notes that the Defendant did not mention the alleged third man in his employee statement form about the incident. (<u>See generally</u> Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., Ex. M). The Plaintiff also argues that

T:\ORDERS\06\Simmons\06cv2719\msjtwt.wpd                    -5-

the Defendant did not produce any evidence that the area around the convenience store was in fact a high crime area.  He also points out that the Defendant has not submitted any filings from the DeKalb County government establishing the scene as a notorious illegal drug area.  See DEKALB CO., GA., CODE § 16-45.2(g) (mandating that chief of police must file designations with board of commissioners and superior court for area to be considered high-crime zone with excessive drug-related offenses).

Given that there is a material dispute about the presence of a third man - and whether he fled the scene - the Court cannot conclude that the stop was based upon a reasonable, objective suspicion.  According to the Plaintiff, he and an acquaintance were walking to their vehicles after making purchases in the convenience store. Simply walking out of a store to a car - even in a high-crime neighborhood - does not create a minimum level of objective justification.  "Whether arguable reasonable suspicion existed for Defendants' investigatory stop depends on whose version of events a jury believes.  The Plaintiff['s] version, if credited, shows no arguable reasonable suspicion."  Jackson v. Sauls, 206 F.3d 1156, 1166 (11th Cir. 2000).

The Defendant also claims there is no material factual dispute that he had probable cause to detain the Plaintiff.  It should be noted at the outset that the Defendant concedes in his motion that he arrested the Plaintiff by placing him in the locked patrol car: "Attendant with the other circumstances, once the Officer found

three thousand dollars on Willie Laster, he had probable cause to arrest both men for violating the loitering for drug purposes ordinance." (Def.'s Mot. for Summ. J., at 7).

The Fourth Amendment to the United States Constitution forbids unconstitutional searches and seizures. An arrest is a seizure of a person. Skop v. City of Atlanta, GA, 485 F.3d 1130, 1138 (11th Cir. 2007) (citing California v. Hodari D., 499 U.S. 621, 624 (1991)). A warrantless arrest is constitutional under the Fourth Amendment provided there is probable cause to believe a criminal offense has been or is being committed. Devenpeck v. Alford, 543 U.S. 146, 152 (2004). Probable cause exists when the officer knows of facts or circumstances that would warrant a reasonable belief that the suspect had committed or was committing the crime. Skop, 485 F.3d at 1137; see also Davenpeck, 543 U.S. at 152; Maryland v. Pringle, 540 U.S. 366, 371 (2003). Even if an officer arrests a person without probable cause, the officer will be shielded from liability by qualified immunity so long as arguable probable cause existed for the arrest. Skop, 485 F.3d at 1137. The existence of arguable probable cause hinges on whether "reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest." Id. (quoting Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir. 2002)).

According to the Defendant, once he developed a reasonable suspicion of drug-related activity by Simmons and Laster, he patted them down. The Defendant claims the search yielded some denomination of $3,000 in bills on Laster. According to the Defendant, this triggered the probable cause to arrest Simmons and Laster and search their vehicles. The presence of a large amount of cash on a suspect, combined with the high-crime setting, the clandestine snooping by a suspect, the flight of the third man, and the inability of either suspect to name the other one, would likely lead a reasonable police officer to conclude that drug activity had taken place or was taking place. See, e.g., U.S. v. Reed, 443 F.3d 600 (7th Cir. 2006) (presence of large amount of cash is relevant factor in creating probable cause).

Yet, at this stage of the proceedings, the Eleventh Circuit has made clear that the district court must assume contested facts in favor of the non-moving party. Skop, 485 F.3d at 1130. The Plaintiff insists that the only things that he saw come out of Laster's pockets were lottery tickets, his driver's license, car keys, and "a few one-dollar bills." (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 3). Under the Plaintiff's version of the facts, there was no flight of a third person (or third person at all), the suspects were merely walking to the car after making purchases from the store, there was no peeking around a corner to see what the officer was doing, and no one was carrying a large roll of currency.

Further, the Defendant's assertion that DeKalb County's anti-loitering ordinance, DEKALB CO., GA., CODE § 16-45.2, creates probable cause to arrest a suspect under these circumstances is misplaced.  First, the Defendant has provided no evidence that the scene was designated as a notorious area of drug activity as required under the ordinance.  Second, it is unclear that the ordinance would provide for an arrest under these circumstances.  The ordinance states:

> If a police officer who detains a person pursuant to this Code section develops probable cause to believe that the person is in violation of this Code section, the officer may order the person to immediately leave the location and to remain at least five hundred (500) feet away from the location for at least five (5) hours.  In the event that person refuses to comply with such an order, the police officer may arrest the person and charge him with a violation of this section.

DEKALB CO., GA., CODE § 16-45.2(f) (cf. DEKALB CO., GA., CODE § 16-45.2(e)) ("No arrest may be made for a violation of this section unless the arresting officer first affords the person an opportunity to explain the person's presence and conduct.").  Third, although true that the statute allows an officer to "detain" a suspect for the duration of an investigation, the ordinance cannot restrict a citizen's Fourth Amendment right to be free from arrest absent probable cause of the commission of a crime.  Fourth, even supposing the anti-drug loitering ordinance does allow an officer to arrest the suspect immediately, probable cause does not exist under the Plaintiff's version of events.  As the Defendant admits, "[a]n individual's presence in

an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion," let alone probable cause, that the person is committing a crime. (Def.'s Mot. for Summ. J., at 5). Under the Plaintiff's account, presence in an area of expected criminal activity is all that could arguably support suspicion of criminal activity.

The Defendant argues that, in the alternative of a grant in favor for summary judgment on the merits, he is entitled to qualified immunity. Even if the Defendant acted unconstitutionally, he may be shielded from liability for civil damages if he did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity protects government officials from suits in their individual capacities so long as they were performing discretionary functions. McClish v. Nugent, 483 F.3d 1231, 1237 (11th Cir. 2007). The parties do not dispute that the Defendant was acting within his discretionary power. Therefore, determining whether an official is entitled to qualified immunity requires asking two questions. Saucier v. Katz, 533 U.S. 194, 201 (2001). First, viewing the facts in the light most favorable to the party asserting the injury, do the facts show that the official's conduct violated a constitutional right? Second, was the

right clearly established?  Id.  According to the Plaintiff's version of the events, his Fourth Amendment rights were violated by an illegal detention and illegal arrest.

The Supreme Court has explained that the salient question for the purpose of determining whether a right was "clearly established" is whether the state of the law at the time of the violation gave the official fair warning that his alleged treatment of the individual was unconstitutional.  Hope, 536 U.S. at 741.  "While officials must have fair warning that their acts are unconstitutional, there need not be a case 'on all fours,' with materially identical facts, before we will allow suits against them." Holloman v. Harland, 370 F.3d 1252, 1277 (2004) ("This circuit was recently chastised by the Supreme Court for taking an unwarrantedly narrow view of the circumstances in which public officials can be held responsible for their constitutional violations.").

In Vinyard v. Wilson, 311 F.3d 1340, 1349-55 (11th Cir. 2002), the Eleventh Circuit held that a right is clearly established: (1) where specific words in the federal statute or constitutional provision render the law applicable to the challenged conduct; (2) where judicial decisions clearly apply to a wide variety of factual circumstances; and (3) where precedents involve materially similar facts.  Id. at 1350-51.  A plaintiff may overcome the qualified immunity defense without relying on fact-specific

caselaw when a preexisting constitutional rule applies with "obvious clarity." Id. at 1352.

In my judgment, this factual scenario falls within the second category of Vineyard. It is clearly established that an officer may not conduct an investigatory stop without reasonable suspicion. Reasonable suspicion clearly (and obviously) requires more than mere presence in a high-crime area. See, e.g., Jackson, 206 F.3d at 1166 (no reasonable suspicion where suspects exhibit normal behavior while patronizing store); U.S. v. Powell, 222 F.3d 913, 917 (11th Cir. 2000) ("An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime"). It is likewise clearly established that an arrest made without probable cause violates the Fourth Amendment. See Thornton v. City of Macon, 132 F.3d 1395, 1399 (11th Cir. 1998). Facts insufficient to establish reasonable suspicion naturally fail to establish probable cause. Officer Jones would still be entitled to qualified immunity if he could demonstrate both arguable reasonable suspicion and arguable probable cause. See, id., Jackson, 206 F.3d at 1165-66. However, if the Plaintiff's account is accepted by the factfinder, there is not even the presence of arguable reasonable suspicion or probable cause. The facts underlying the Plaintiff's claims

and the Defendant's defense of qualified immunity must be determined by the trier of

fact.

IV.  <u>Conclusion</u>

For the reasons set forth above, the Defendant's Motion for Summary Judgment

[Doc. 43] is DENIED.

SO ORDERED, this 15 day of April, 2008.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge